IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

CHARLES ROBERT WRIGHT,       §
                             §
                Plaintiff,   §
                             §   Civil Action No. 3:10-CV-1852-D
VS.                          §
                             §
THE CITY OF GARLAND, TEXAS,  §
et al.,                      §
                             §
                Defendants.  §

MEMORANDUM OPINION
AND ORDER

In this removed action arising from a police shooting and alleging claims under 42

U.S.C. § 1983 and Texas law, defendants The City of Garland, Texas (the "City") and City

police officer Chad Stallings ("Stallings") move to dismiss under Fed. R. Civ. P. 12(b)(6) and

the Texas Tort Claims Act ("TTCA"), Tex. Civ. Prac. & Rem. Code Ann. §§ 101.001-.109

(West 2005).  Their motions present largely procedural questions arising from how plaintiff

pleaded his claims, initially in state court and by amended pleading after removal.  For the

reasons that follow, the court denies Stallings' motion to dismiss, grants in part and denies

in part (as moot) the City's motion, and permits plaintiff to replead.

I

On August 23, 2008 Charles Robert Wright ("Wright") was wounded in the right

shoulder and left thigh when Stallings, a police officer employed by The City of Garland

Police Department ("GPD"), shot through the side and rear of Wright's car as it passed by

Stallings and exited the parking lot of an apartment complex where GPD officers had been investigating a report of a loud party.[1] Wright alleges that he was not attending the party, and that at the time of the shooting, he posed no danger to Stallings because his vehicle was not traveling toward Stallings, but was attempting to exit the apartment complex parking lot. Defendants contend that Wright was intoxicated, and, contrary to Wright's allegations, he attempted to run over Stallings as he approached Wright's car.

On August 20, 2010 Wright filed suit in Texas state court, alleging a claim under 42 U.S.C. § 1983 against the City and asserting state-law claims against Stallings for negligence and gross negligence, or, alternatively, intentional assault. After defendants removed the case to this court, the court granted Wright's unopposed motion to stay the case pending the resolution of a parallel criminal action in which Wright was charged with aggravated assault of a public servant. The stay was lifted on October 21, 2013.

Shortly after the court lifted the stay, the City and Stallings filed motions to dismiss the claims against Stallings under provisions of the TTCA that immunize governmental-unit employees from suit while acting within the general scope of their employment. Stallings sought dismissal under Tex. Civ. Prac. & Rem. Code Ann. § 101.106(f),[2] and the City sought

---

[1]In deciding defendants' Rule 12(b)(6) motions, the court construes the amended complaint in the light most favorable to Wright, accepts as true all well-pleaded factual allegations, and draws all reasonable inferences in Wright's favor. *See, e.g., Lovick v. Ritemoney Ltd.*, 378 F.3d 433, 437 (5th Cir. 2004).

[2]Tex. Civ. Prac. & Rem. Code Ann. § 101.106(f) provides:

If a suit is filed against an employee of a governmental unit

to dismiss Stallings under Tex. Civ. Prac. & Rem. Code Ann. § 101.106(e).[3]  Wright then filed a motion for leave to amend his state-court petition, stating that he wished to comply with defendants' request to dismiss the individual tort claims against Stallings, as required under §101.106(f), and to assert these claims against the City.[4]  The court granted Wright's motion, and Wright filed his first amended complaint ("amended complaint") on November 27, 2013.

In the amended complaint, Wright alleges two claims against the City: a claim under 42 U.S.C. § 1983, and an alternative claim for negligence and gross negligence under the TTCA, Tex. Civ. Prac. & Rem. Code Ann. § 101.021.  He also asserts a claim under 42 U.S.C. § 1983 against Stallings in his individual and official capacities.[5]  Finally, Wright

---

based on conduct within the general scope of that employee's employment and if it could have been brought under this chapter against the governmental unit, the suit is considered to be against the employee in the employee's official capacity only. On the employee's motion, the suit against the employee shall be dismissed unless the plaintiff files amended pleadings dismissing the employee and naming the governmental unit as defendant on or before the 30th day after the date the motion is filed.

[3]Tex. Civ. Prac. & Rem. Code Ann. § 101.106(e) provides:

If a suit is filed under this chapter against both a governmental unit and any of its employees, the employees shall immediately be dismissed on the filing of a motion by the governmental unit.

[4]Wright also stated that he wanted to make clear in his amended complaint that he was asserting a § 1983 claim against Stallings.

[5]A § 1983 action against Stallings in his official capacity is a suit against the City itself.  S*ee Kentucky v. Graham*, 473 U.S. 159, 165 (1985).

- 3 -

pleads a claim for assault and battery under Tex. Penal Code Ann. § 22.01 (West 2011), although he does not specify whether this claim is brought against the City, Stallings, or both.

The City moves under Rule 12(b)(6) to dismiss the claims asserted against it, and it moves under Tex. Civ. Prac. & Rem. Code Ann. § 101.106(e) to dismiss the assault claim brought against Stallings.  Stallings separately moves under Rule 12(b)(6) and Tex. Civ. Prac. & Rem. Code Ann. § 101.106(a) and (f) to dismiss the claims asserted against him. Wright opposes the motions.

## II

Under Rule 12(b)(6), the court evaluates the pleadings by "accept[ing] 'all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'" *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Martin K. Eby Constr. Co. v. Dall. Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)).  To survive the defendants' motions, Wright's amended complaint must allege enough facts "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant[s] [are] liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*; *see also Twombly*, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level[.]").  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the

complaint has alleged—but it has not 'shown'—'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (alteration omitted) (quoting Rule 8(a)(2)). Furthermore, under Rule 8(a)(2), a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Although "the pleading standard Rule 8 announces does not require 'detailed factual allegations,'" it demands more than "'labels and conclusions.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). And "'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Twombly*, 550 U.S. at 555).

III

The court considers first whether the TTCA bars Wright's claims against Stallings.

A

Stallings moves to dismiss Wright's action against him on the following basis: (1) Wright initially sued him in his official capacity; Wright alleged that Stallings was acting in the course and scope of his employment as a GPD police officer, and that he was acting under color of the laws and regulations of the state of Texas and the GPD; Tex. Civ. Prac. & Rem. Code Ann. § 101.106(f) provides, in pertinent part, that if a suit against a governmental-unit employee is based on conduct within the general scope of the employee's employment, and if the suit could have been brought under the TTCA against the governmental unit, the suit is considered to be against the employee only in his official capacity; each claim against Stallings could have been brought against the City under the TTCA; therefore, as a matter of law, Wright's action against Stallings was brought against him solely in his official capacity; (2) when Wright filed his amended complaint, he only

- 5 -

withdrew two of the three common law tort claims against Stallings (he left in place the claim for assault), and he added a new federal claim (§ 1983) against Stallings in his individual and official capacities; Stallings is entitled to dismissal under Tex. Civ. Prac. & Rem. Code Ann. § 101.106(f) because he was initially sued in his official capacity, and dismissal was mandated once Stallings moved to dismiss the original petition and Wright failed to dismiss him within 30 days; and (3) Stallings is entitled to dismissal under Tex. Civ. Prac. & Rem. Code Ann. § 101.106(a) because, when Wright sued the City in his amended complaint, he made an irrevocable election to sue the City, and was barred from suing or recovering from Stallings regarding the same subject matter.

Wright responds that the TTCA applies only to state-law claims, not to his § 1983 action, and that all of the state-law claims were operatively dismissed by his amended complaint.

B

The court need not decide whether the remaining state-law claim (assault and battery) that Stallings maintains Wright is asserting against him individually is barred on the basis on which Stallings relies. In response to Stallings' motion, Wright contends that he intended by his amended complaint to dismiss all state-law claims against Stallings. In his amended complaint, he explicitly acknowledges that he is "elect[ing] to proceed with his State law claims solely against The City of Garland, as permitted by the [TTCA]." Am. Compl. ¶ 26. Accordingly, the court need not address the ground of Stallings' motion in which he contends that the TTCA bars this state-law claim.

- 6 -

The City also moves to dismiss Wright's assault and battery claim to the extent Wright intends to bring the claim against Stallings, arguing that the claim is barred under Tex. Civ. Prac. & Rem. Code Ann. § 101.106(e).  Given Wright's acknowledgment that this claim is asserted solely against the City, the court denies as moot the City's motion under Tex. Civ. Prac. & Rem. Code Ann. § 101.106(e) to dismiss the claim against Wright.

### C

Stallings is not entitled to dismissal of Wright's § 1983 claim against him based on Tex. Civ. Prac. & Rem. Code Ann. § 101.106(f) or § 101.106(a).  These are provisions of the TTCA, which does not apply to Wright's § 1983 claim.  *See, e.g., Estate of Sorrells v. City of Dallas*, 2002 WL 1899592, at *4 (5th Cir. July 10, 2002) (per curiam) (holding that TTCA § 101.106 did not apply where judgment was based on § 1983).

### D

Finally, Stallings' argument that Wright is barred from suing him in his official capacity by Tex. Civ. Prac. & Rem. Code Ann. § 101.106(f) or § 101.106(a) is also misplaced.

Reduced to its essence, Stallings' argument is that, once he moved under the TTCA to dismiss the action and Wright failed to dismiss him within 30 days, Wright's suit against him was dismissed as a matter of law, triggering the bar of the TTCA.  But a decision of a Texas court of appeals explains that such a dismissal is not automatic, and its reasoning supports the conclusion that Wright was not barred under the TTCA from adding his § 1983 claim against Stallings when he dropped his state-law claims.

- 7 -

In *Texas Department of Aging & Disability Services v. Cannon*, 383 S.W.3d 571 (Tex. App. 2012, pet. filed), the plaintiff asserted in her original petition only tort claims against the Texas Department of Aging and Disability Services (the "Department") and certain of its employees, alleging that the employees had acted negligently in the course and scope of their employment. *Id.* at 573-74.  The Department moved to dismiss the employees as defendants under Tex. Civ. Prac. & Rem. Code Ann. §§ 101.106(e) and 101.106(a).  Before the court ruled on the Department's motion, however, the plaintiff amended her petition to add an intentional tort claim and an action under § 1983 against the employees.  *Id.* at 574.  The Department again moved to dismiss the employees from the lawsuit, arguing in the trial court and on appeal that "the tort claims against the employees were dismissed 'the moment' that the Department requested dismissal of those claims pursuant to section 101.106(e); thus, there was no existing suit against the employees to which [the plaintiff] could add the section 1983 claims by amending her petition."  *Id.* at 577.  The court of appeals summarized the issue presented as

> whether the tort claims against the employees were considered dismissed immediately upon the [§ 101.106(e)] request, thereby necessitating a new suit to assert section 1983 claims against the employees; or, instead, whether the tort claims were considered dismissed only when the trial court signed an order of dismissal, thereby allowing the section 1983 claims to continue as already asserted via amended petition in the existing suit.

*Id.* at 577-78.

The court held that, because § 101.106(e) states that the employees "shall immediately be dismissed" and requires the filing of a motion to obtain dismissal, action by the trial court

- 8 -

was necessary to effect the requested relief.  Therefore, "the tort claims were not effectively dismissed until the trial court signed an order."  *Id.* at 578.  The *Cannon* court thus held that because the plaintiff "amended her suit to add section 1983 claims against the employees before the trial court dismissed the tort claims against them, the section 1983 claims were asserted in an existing suit against the employees."  *Id.* at 580.  Consequently, the trial court "did not err by refusing to dismiss the section 1983 claims on the ground that they were not 'before the court.'"  *Id.* at 579.

The present case is similar to *Cannon*.  Here, although the City moved under § 101.106(e) to dismiss Wright's tort claim asserted against Stallings and Stallings moved to dismiss this claim under § 101.106(f), this court never issued an order dismissing Stallings from the suit.  Accordingly, Stallings remained a defendant at the time Wright amended his original petition.  The amendment was thus procedurally proper, and Stallings is not entitled to dismissal on this basis.

IV

Stallings next seeks dismissal on the basis that Wright's newly-asserted § 1983 claim is barred by the statute of limitations.

A

"'Although dismissal under Rule 12(b)(6) is ordinarily determined by whether the facts alleged in the complaint, if true, give rise to a cause of action, a claim may also be dismissed if a successful affirmative defense appears clearly on the face of the pleadings.'" *Sivertson v. Clinton*, 2011 WL 4100958, at *2 (N.D. Tex. Sept. 14, 2011) (Fitzwater, C.J.)

(quoting *Clark v. Amoco Prod. Co.*, 794 F.2d 967, 970 (5th Cir. 1986)); *see also White v. Padgett*, 475 F.2d 79, 82 (5th Cir. 1973) (holding that claim is "subject to dismissal under Rule 12(b)(6) . . . when [an] affirmative defense clearly appears on the face of the complaint."). "In the usual case, this court is unable to grant dismissal under Rule 12(b)(6) based on an affirmative defense because it rarely appears on the face of the complaint." *Simon v. Telsco Indus. Emp. Benefit Plan*, 2002 WL 628656, at *1 (N.D. Tex. Apr. 17, 2002) (Fitzwater, J.). Furthermore, "[i]t is well settled . . . that in order for a defendant to prevail on the basis of limitations at the pleadings stage, the plaintiff must normally plead [it]self out of court." *W. Fork Partners, L.P. v. Chesapeake Exploration, L.L.C.*, 2009 WL 2252505, at *5 ( N.D. Tex. July 29, 2009) (Fitzwater, C.J.) (quoting *Funches v. City of Dallas*, 1999 WL 261842, at *2 (N.D. Tex. Apr. 28, 1999) (Fitzwater, J.)) (alteration in original).

B

Stallings contends that, before Wright filed his amended complaint, Wright had not sued Stallings in his individual capacity or asserted a § 1983 claim against him. According to Stallings, because Wright pleaded in his amended complaint that his claim accrued on August 23, 2008, and because the statute of limitations for an excessive force claim is two years, Wright's individual-capacity § 1983 claim against Stallings is barred by the statute of limitations. Wright responds that, under Rule 15(c), his § 1983 claim relates back to his timely-filed original petition, and therefore is not time-barred. He contends that Stallings, in his individual capacity, has been a defendant since the filing of the original petition, and that the newly-asserted § 1983 claim is based on facts that are identical to those pleaded in

support of Wright's original state-law claims against Stallings.

C

1

Rule 15(c) provides that, in certain circumstances, amendments to pleadings relate back to the date of the original pleading.  One such circumstance is when the claim or defense asserted in the amended pleading arises out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading.  *See* Rule 15(c)(1)(B).  Another circumstance is when an amendment "changes the party or the naming of the party against whom a claim is asserted."  Rule 15(c)(1)(C).  Under Rule 15(c)(1)(C), an amendment relates back if

> (i) the claim or defense asserted in the amended pleading arose out of conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading; (ii) the party to be brought in has received such notice of the institution of the action that the party will not be prejudiced in maintaining a defense on the merits; (iii) the party to be brought in "knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against the party;" and (iv) the requirements in (ii) and (iii) were met within the applicable statutory limitations period.

*Johnese v. Jani-King, Inc*., 2007 WL 2263926, at *2 (N.D. Tex. Aug. 8, 2007) (Fitzwater, J.) (quoting *Braud v. Transp. Serv. Co. of Ill*., 445 F.3d 801, 806 n.12 (5th Cir. 2006)).  In determining whether an amendment relates back, the court must "take a 'sensible approach to reading a complaint so that suits may be maintained regardless of technical pleading errors,' as is required by Rule 15(c)."  *Sanders-Burns v. City of Plano*, 594 F.3d 366, 380

- 11 -

(5th Cir. 2010) (quoting *Hill v. Shelander*, 924 F.2d 1370, 1373-74 (7th Cir. 1991)).  "The purpose of Rule 15(c) is to help, not hinder, persons who have a legal right to bring their problems before the courts."  *Id.* (internal quotation marks and citation omitted).

2

Before the court can determine whether Wright's individual-capacity § 1983 claim against Stallings relates back to his original petition for statute of limitations purposes under Rule 15(c), it must decide whether the amended complaint "changes the party or the naming of the party against whom a claim is asserted."  Rule 15(c)(1)(C).  Wright contends that, in his original petition, he specifically brought his claims against Stallings individually and not in a representative capacity.  Although the original petition itself does not state whether the tort claims against Stallings are brought against him in his official or individual capacity, the allegations in the original petition clearly indicate that Wright intended to hold Stallings personally liable for negligence, gross negligence, or, alternatively, assault.  First, Wright set out his tort claims against Stallings in a separate section and under a separate subheading (entitled "Action Against Chad Stallings") from his allegations against the City.  Pet. 3.  In doing so, Wright did not explicitly incorporate his § 1983 allegations against the City—including the allegation that Stallings was acting in the course and scope of his employment—into his allegations against Stallings.  Second, Wright's § 1983 allegations against the City focus on City policies and customs that allegedly violated Wright's constitutional rights.  In contrast, the allegations against Stallings focus on Stallings' individual actions in relation to what a reasonably prudent police officer would have done.

- 12 -

Third, Wright included against Stallings an alternative claim for the intentional tort of assault. Because the TTCA does not waive immunity for claims arising from intentional torts, *see* Tex. Civ. Prac. & Rem. Code Ann. § 101.057, this claim would be barred if asserted against Stallings in his official capacity. Considering the substance of Wright's original petition, the court concludes that he initially sued Stallings in his individual capacity.

Stallings posits that, because Wright expressly alleged in his original petition that Stallings was acting in the course and scope of his employment as a GPD police officer, the claims against him were official capacity claims under Tex. Civ. Prac. & Rem. Code Ann. § 101.106(f), and Wright therefore did not initially sue Stallings in his individual capacity. The court disagrees. The allegation to which Stallings refers was made as part of the claim against the City and appears to be intended to establish the City's liability for Stallings' conduct.

The parties do not dispute that the § 1983 claim asserted against Stallings in the amended complaint arises out of the occurrence set forth in the original petition. *See* Rule 15(c)(1)(B). Because Stallings was initially sued in his individual capacity and was not dismissed from the suit before Wright amended his complaint, the § 1983 claim asserted against Stallings in his individual capacity relates back to the date of the original petition, under Rule 15(c)(1)(B).

3

Assuming *arguendo* that Wright's original petition asserted only an official-capacity claim against Stallings and that the individual-capacity § 1983 claim in the amended

complaint sought to change the party against whom the claim was asserted, the individual-capacity § 1983 claim would nonetheless relate back under Rule 15(c)(1)(C).

The parties do not dispute that the amended complaint arises out of the same occurrence set forth in the original petition. And because Stallings was named in the original petition and personally served within the limitations period, he clearly had notice of the institution of the action, and he does not argue that he will be prejudiced in maintaining a defense on the merits. As to the third element, a review of the original petition indicates that if Wright did, in fact, plead an official capacity suit against Stallings under the TTCA, he did so by mistake, and Wright "is not now merely attempting a strategic change by amending" his complaint. *See Sanders-Burns*, 594 F.3d at 379. Instead, as explained above, Wright clearly intended in his original petition to sue Stallings in his individual capacity. Stallings knew that, as pleaded, an individual-capacity claim could not be maintained against him under the TTCA, and he should have known from the context in which Wright pleaded his tort claims against Stallings that Wright intended to bring an individual-capacity suit against him.[6] *See Hill*, 924 F.2d at 1378 (holding that amendment changing official capacity suit to individual capacity suit related back, for limitations purposes, because, *inter alia*, it should have been clear to defendant that suit was brought against him in his individual capacity for injuries he inflicted on plaintiff), *cited with approval in Sanders-Burns*, 594 F.3d at 375

---

[6]Stallings even pleaded the affirmative defense of qualified immunity in his answer to Wright's original petition—a defense against an individual capacity lawsuit—which supports the conclusion that Stallings understood that Wright intended to sue him in his individual capacity. *See Sanders-Burns*, 594 F.3d at 379.

(holding that where plaintiff's complaint stated that an officer was sued in his official capacity, but substance of complaint alleged claims against officer in his individual capacity, amendment substituting the word "individual" for the word "official" related back to complaint); *see also Brown v. Shaner*, 172 F.3d 927, 933-34 (6th Cir. 1999) (amended complaint naming officers in their individual capacity related back where complaint "did not speak in unequivocal terms . . . [because] [a]ll of the defendants' wrongdoing related to their personal conduct," and the "failure to add the word 'individual' to [the] original complaint was a simple 'mistake'" such that relation back was appropriate).

Because Wright's amended complaint relates back to his original petition under either Rule 15(c)(1)(B) or Rule 15(c)(1)(C), Stallings' motion under 12(b)(6) to dismiss Wright's individual-capacity § 1983 claim based on limitations is denied.

## V

The court now turns to the City's motion under Rule 12(b)(6) to dismiss Wright's § 1983 claim against the City.

## A

A municipality is a "person" subject to suit under § 1983 under certain circumstances. *See Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658, 690 (1978). Although a municipality cannot be held liable simply on a theory of *respondeat superior*, *id.* at 691, it can be held liable if a deprivation of a constitutional right was inflicted pursuant to an official policy or custom, *Piotrowski v. City of Houston*, 237 F.3d 567, 579 (5th Cir. 2001). Municipal liability requires proof of three elements: "(1) an official policy (or custom), of

which (2) a policymaker can be charged with actual or constructive knowledge, and (3) a constitutional violation whose 'moving force' is that policy or custom." *Valle v. City of Houston*, 613 F.3d 536, 541-42 (5th Cir. 2010) (quoting *Pineda v. City of Houston*, 291 F.3d 325, 328 (5th Cir. 2002)) (some internal quotation marks omitted).

The first element requires that plaintiffs adequately plead an official policy or custom. "[A] policy can be shown through evidence of an actual policy, regulation, or decision that is officially adopted and promulgated by lawmakers or others with policymaking authority." *Id.* at 542 (citing *Burge v. St. Tammany Parish*, 336 F.3d 363, 369 (5th Cir. 2003)). Although a "single decision by a policy maker may, under certain circumstances, constitute a policy for which a municipality may be liable[,] . . . this 'single incident exception' is extremely narrow and gives rise to municipal liability only if the municipal actor is a final policymaker." *Id.* (citations, brackets, and some internal quotation marks omitted). A custom is "a persistent, widespread practice of City officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well-settled as to constitute a custom that fairly represents municipal policy." *Piotrowski*, 237 F.3d at 579 (quoting *Webster v. City of Houston*, 735 F.2d 838, 841 (5th Cir. 1984) (en banc) (per curiam)).

To satisfy the second element, the plaintiff must adequately plead that "actual or constructive knowledge of a custom [is] attributable to the governing body of the municipality or to an official to whom that body has delegated policy-making authority." *Valle*, 613 F.3d at 542 (brackets omitted) (quoting *Webster*, 735 F.2d at 842); *Piotrowski*,

- 16 -

237 F.3d at 579. Liability attaches only when a final policymaker (as distinguished from a final decisionmaker), who has "the responsibility for making law or setting policy in any given area of a local government's business," establishes the municipal policy with respect to the action ordered. *See City of St. Louis v. Praprotnik*, 485 U.S. 112, 125 (1988); *see also Jett v. Dall. Indep. Sch. Dist.*, 7 F.3d 1241, 1247 (5th Cir. 1993) (explaining distinction between final policymaking authority and mere decisionmaking); *Bolton v. City of Dallas, Tex.*, 541 F.3d 545, 548-49 (5th Cir. 2008) (per curiam) ("Our analysis must also take into account the difference between final decisionmaking authority and final policymaking authority, a distinction that this circuit recognized as fundamental. . . . [D]iscretion to exercise a particular function does not necessarily entail final policymaking authority over that function." (citations omitted)).

The third element requires that the plaintiff adequately plead that the municipal policy or custom was the "moving force" of the constitutional deprivation, which requires a "high threshold of proof." *Piotrowski*, 237 F.3d at 580 (citing *Monell*, 436 U.S. at 694). The "plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights." *Valle*, 613 F.3d at 542 (quoting *Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 404 (1997)) (internal quotation marks omitted). The plaintiff therefore "must demonstrate that a municipal decision reflects deliberate indifference to the risk that a violation of a particular constitutional or statutory right will follow the decision." *Id*. (quoting *Bd. of Cnty. Comm'rs*, 520 U.S. at 411) (internal quotation marks omitted); *see also*

*Piotrowski*, 237 F.3d at 579 ("[E]ven a facially innocuous policy will support liability if it was promulgated with deliberate indifference to the 'known or obvious consequences' that constitutional violations would result." (quoting *Bd. of Cnty. Comm'rs*, 520 U.S. at 407)). Simple or even heightened negligence, however, is insufficient to meet the deliberate indifference requirement. *Piotrowski*, 237 F.3d at 579 (quoting *Bd. of Cnty. Comm'rs*, 520 U.S. at 407).

B

In support of his § 1983 claim against the City, Wright pleads that "[t]he [GPD] had a policy, practice, pattern and custom in place that enabled its agents and employees to act with deliberate indifference to the constitutional rights of individuals."  Am. Compl. ¶ 15. He further alleges that the City (1) tolerated its officers' using deadly force in the absence of any imminent threat of harm or danger by not disciplining police officers for their misconduct and by overlooking and covering up officer misconduct; and (2) failed to supervise and train its police officers. *Id.* ¶ 16.

The City contends that Wright has not sufficiently pleaded the elements of his § 1983 claim because, once the conclusory allegations are removed, the amended complaint is devoid of any material facts regarding the City's policies, customs, or practices. Additionally, the City argues that Wright has failed to plead any facts to identify the final policymaker or any alleged knowledge of the unnamed final policymaker relating to any custom, policy, or practice of the City.

In response, Wright argues that he is not required to allege every element of the basis

- 18 -

for liability and that he has set out sufficient facts and details in his amended complaint to survive a 12(b)(6) motion.  He posits that to plead with the specificity demanded of by the City, discovery would have to be conducted so that he could determine and plead specific facts in support of his § 1983 claim.  Finally, he requests, "in the unlikely event this Court finds that [he] has failed to meet the notice requirements of Rule 8(a)" that he be given an opportunity to amend his complaint to address the deficiencies raised by the City.  P. Resp. 6-7.

## C

Wright alleges that he was deprived of his Fourth Amendment rights when Stallings "unjustifiably shot and seriously injured [him] under circumstances where no reasonable police officer would have done so."  Am. Compl. ¶ 17.  Although he contends that the City had a policy or custom of tolerating the use of deadly force in the absence of an imminent threat of harm and that the City failed to adequately train or supervise its police officers, Wright does not plausibly allege that these official policies or customs were the moving force behind Stallings' actions on August 23, 2008 and, hence, the alleged constitutional deprivation.[7]  *Valle*, 613 F.3d at 542.  Stated differently, Wright neither pleads that Stallings shot at and injured him as a result of being inadequately trained or supervised, nor does he

---

[7]Because Wright has failed to plausibly plead the third element of his § 1983 claim, and because the court is granting him leave to amend his complaint, the court does not address whether Wright has plausibly alleged, under the standard articulated in *Iqbal*, 556 U.S. 678-79, and *Twombly*, 550 U.S. at 555, an official policy or custom, of which a policymaker can be charged with actual or constructive knowledge, *Valle,* 613 F.3d 541-42.

allege that Stallings did so as a result of the GPD general policy of tolerating the use of deadly force in the absence of an imminent threat of harm or danger.[8]  Accordingly, he has failed to plausibly allege a constitutional violation whose "moving force" is an official policy or custom of which a policymaker had knowledge, and the City is entitled to dismissal of Wright's § 1983 claim brought against it.  *Id.* at 541-42.

In his response, Wright seeks the "opportunity to amend his Complaint to address the alleged deficiencies now brought up by the [City]."  P. Resp. 7.  Because the court's usual practice when granting a motion to dismiss is to permit a plaintiff at least one opportunity to replead,[9] the court will give Wright an opportunity to amend his complaint to plead a

---

[8]To the extent Wright suggests that he is not required to "allege every element of the basis for liability to defeat a motion to dismiss," P. Resp. 6, Wright misstates his pleading obligation, which is to allege enough facts "to state a claim to relief that is plausible on its face."  *Twombly*, 550 U.S. at 570.  Wright also argues that he is only required to give "fair notice" of his claim and, once fair notice is given, discovery can be used to "root out" and dispose of meritless claims.  P. Resp. 6.  He contends that he is entitled to conduct discovery before pleading specific facts that identify the policy, properly connect the policy to the City, and show that his injury was incurred because of the application of that specific policy.  But there is simply no merit to Wright's contention that discovery must, or even should, be permitted before dismissal is proper.  *See Iqbal*, 556 U.S. at 678-79 (Rule 8 "does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions"); *accord Twombly*, 550 U.S. at 559 & 563 n.8 (stating that "[i]t is no answer to say that a claim just shy of a plausible entitlement to relief can, if groundless, be weeded out early in the discovery process" and recognizing that "before proceeding to discovery, a complaint must allege facts suggestive of illegal conduct"); *see also Grubbs v. Kanneganti*, 565 F.3d 180, 185 (5th Cir. 2009) (stating that *Twombly's* new standard "raises a hurdle in front of what courts had previously seen as a plaintiff's nigh immediate access to discovery").

[9]Although Wright has already amended his complaint once, he did so on his own, not after the court identified deficiencies in his pleadings.

plausible claim against the City under § 1983.  *See In re Am. Airlines, Inc., Privacy Litig.*, 370 F.Supp.2d 552, 567-68 (N.D. Tex. 2005) (Fitzwater, J.) ("[D]istrict courts often afford plaintiffs at least one opportunity to cure pleading deficiencies before dismissing a case, unless it is clear that the defects are incurable or the plaintiffs advise the court that they are unwilling or unable to amend in a manner that will avoid dismissal." (citation and internal quotation marks omitted)).  He must do so within 28 days of the date this memorandum opinion and order is filed.

VI

Finally, the City moves pursuant to Rule 12(b)(6) to dismiss Wright's state-law claims for negligence and assault.

A

The City maintains that Wright's claim for the intentional tort of assault should be dismissed because the TTCA does not waive immunity for intentional torts.  It then posits that Wright's negligence claims should be dismissed because a negligence claim under the TTCA cannot arise out of the intentional acts (including the use of excessive force) of a law enforcement officer against a person.  Because the gravamen of Wright's negligence claims is Stallings' intentional act in shooting at him, the City contends that these claims are excluded from the TTCA's waiver of immunity.

Wright concedes in response that the TTCA bars his claim for assault, and he withdraws that claim.  But he argues that neither his negligence claim nor his gross negligence claim alleges an intentional tort, and that the court must accept all well-pleaded

facts in his amended complaint as true and "cannot look beyond the pleading or read into the pleading words that aren't there (i.e., intentional tort)."  P. Resp. 7.

B

The TTCA does not apply to any claim "arising out of assault, battery, false imprisonment, or any other intentional tort."  Tex. Civ. Prac. & Rem. Code Ann. § 101.057. "If a plaintiff pleads facts which amount to an intentional tort, no matter if the claim is framed as negligence, the claim generally is for an intentional tort and is barred by the TTCA."  *Harris Cnty., Tex. v. Cabazos*, 177 S.W.3d 105, 111 (Tex. App. 2005, no pet.).  "A plaintiff cannot circumvent the intentional tort exception by couching his claims in terms of negligence." *Id.* (citations omitted); *see also Lopez-Rodriguez v. City of Levelland, Tex.*, 100 Fed. Appx. 272, 275 (5th Cir. 2004) (per curiam) ("Texas law does not allow a plaintiff to avoid the bar of governmental immunity by describing essentially intentional conduct as an act of negligence." (citations omitted)).

> The Act does not waive immunity with respect to claims arising out of assault, battery, false imprisonment, or any other intentional tort. The Act also excludes allegations against a governmental unit arising out of the same conduct that formed the basis of the intentional tort claims against its employee. Even where a plaintiff labels his claim as negligence, that claim will still be barred if the label is merely a fiction or arises out of an intentional tort.

*Cox v. City of Ft. Worth, Tex.*, 762 F.Supp.2d 926, 935 (N.D. Tex. 2010) (McBryde, J.) (citations and internal quotation marks omitted).  In deciding whether a plaintiff has alleged an intentional tort or negligence, Texas courts focus "not [on] whether the defendant intended

the acts, but [on] whether the defendant intended the resulting injury." *Durbin v. City of Winnsboro*, 135 S.W.3d 317, 321 (Tex. App. 2004, pet. denied) (citing *Reed Tool Co. v. Copelin*, 689 S.W.2d 404, 406 (Tex. 1985)); *see also Bridges v. Robinson*, 20 S.W.3d 104, 114 (Tex. App. 2000, no pet.) ("The fundamental difference between a negligence injury and an intentional injury is the specific intent to inflict injury."), *overruled in part on other grounds by Telthorster v. Tennell*, 92 S.W.3d 457 (Tex. 2002).

Although Wright alleges that "[t]he shooting of [Wright] was a direct and proximate result of the negligence of Stallings," Am. Compl. ¶ 26, he does not plead, other than by this conclusory allegation, that Stallings in fact acted negligently.  Rather, he alleges that Stallings "shot at and wounded" him, "shooting through the side of the automobile as [Wright] was passing by Stallings."  *Id.* at ¶ 8.  He asserts that his vehicle was not traveling towards Stallings when Stallings shot at his car, and that Stallings "continued to fire at [Wright] even after he exited the parking area and was on the street."  *Id.* at ¶ 9.  These contentions plausibly allege only intentional conduct, not negligence.  In fact, Wright expressly alleges that Stallings "intentionally, knowingly, and/or recklessly caused [him] to be shot."  *Id.* ¶ 31.  Wright does not allege an accidental shooting, such as the inadvertent discharge of Stallings' weapon; nor does he assert that, although Stallings intentionally discharged his weapon, he did not intend for the bullets to strike Wright.  Instead, Wright's allegations permit only the inference that Stallings intended to shoot Wright.

Accordingly, Wright's "negligence" claims are barred by the TTCA. *See, e.g., Huong v. City of Port Arthur*, 961 F.Supp. 1003, 1009 (E.D. Tex. 1997) ("Plaintiffs cannot

- 23 -

circumvent the intentional tort exception to waiver of municipal liability by simply pleading negligence when the shooting event upon which they base their claims is actually an intentional tort."); *Tex. Dept. of Pub. Safety v. Petta*, 44 S.W.3d 575, 580 (Tex. 2001) ("the conduct Petta complains of is the same conduct that forms the basis of her assault and battery claim against Rivera.  The specific conduct—hitting the window, calling a tow truck, aiming the gun, blocking Petta in with the cruiser, and firing at Petta's tires—is clearly intentional. The allegations fit squarely within section 101.057's exclusion of claims arising out of assault, battery, and false imprisonment."); *Cabazos*, 177 S.W.3d at 111-13 (holding intentional-tort exception applicable to plaintiff's negligence claim that officer, who had intentionally shot plaintiff during traffic stop, negligently discharged his pistol and negligently effectuated arrest).

\*   \*   \*

For the foregoing reasons, Stallings' motion to dismiss under Rule 12(b)(6) is denied, the City's motion to dismiss under Rule 12(b)(6) is granted in part and denied in part as moot, and Wright is granted leave to replead.

**SO ORDERED**.

April 16, 2014.

_____
SIDNEY A. FITZWATER
CHIEF JUDGE

- 24 -