IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| CHARLES ROBERT WRIGHT, | § | |
| | § | |
| Plaintiff, | § | |
| | § | Civil Action No. 3:10-CV-1852-D |
| VS. | § | |
| | § | |
| THE CITY OF GARLAND, TEXAS, | § | |
| et al., | § | |
| | § | |
| Defendants. | § | |

MEMORANDUM OPINION
AND ORDER

Plaintiff Charles Robert Wright ("Wright") brings this action against defendant Chad Stallings ("Officer Stallings"), a police officer, and defendant The City of Garland, Texas (the "City"), Officer Stallings' employer, arising from an incident in which Officer Stallings shot Wright. Wright alleges that defendants are liable under 42 U.S.C. § 1983 because Officer Stallings used unreasonable, unnecessary, and excessive force against him. Officer Stallings moves for summary judgment based on qualified immunity, and the City moves to dismiss for failure to state a claim on which relief can be granted. For the reasons that follow, the court grants defendants' motions and dismisses this action with prejudice.

I

Early in the morning of August 23, 2008, Wright drove to the gated entrance of the Retreat Apartments, located in Garland, Texas.[1]  He could not enter the apartment complex because he did not know the entry code, so he began honking his horn.[2]  At that time, Officer Stallings and other officers of the Garland Police Department ("GPD") were inside the apartment complex investigating a party that they believed involved underage drinking and marihuana use.  When Wright arrived, Officer Stallings was at the northwest corner of the apartment complex searching for two individuals who had fled the scene that the GPD officers were investigating.  Officer Stallings heard Wright's horn honking and suspected that he might be there to pick up the individuals who had fled the scene.

───────────────

[1]In deciding the City's Fed. R. Civ. P. 12(b)(6) motion, the court construes Wright's second amended complaint in the light most favorable to him, accepts as true all well-pleaded factual allegations, and draws all reasonable inferences in his favor.  *See, e.g., Lovick v. Ritemoney Ltd.*, 378 F.3d 433, 437 (5th Cir. 2004).  "The court's review [of a Rule 12(b)(6) motion] is limited to the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint."  *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010) (citation omitted).

In deciding Officer Stallings' summary judgment motion, the court views the evidence in the light most favorable to Wright as the summary judgment nonmovant and draws all reasonable inferences in his favor.  *See, e.g., Owens v. Mercedes-Benz USA, LLC*, 541 F.Supp.2d 869, 870 n.1 (N.D. Tex. 2008) (Fitzwater, C.J.) (citing *U.S. Bank Nat'l Ass'n v. Safeguard Ins. Co.*, 422 F.Supp.2d 698, 701 n.2 (N.D. Tex. 2006) (Fitzwater, J.)).

[2]Wright contends in his response that he honked his horn hoping that someone at the apartment complex would let him in.  But he testified in his deposition that he drove to the apartment complex that night because he had been told that GPD officers were there to break up a party, and he offered to help by creating a slight diversion so that some friends of his friend could leave.

- 2 -

Officer Stallings approached Wright's car on foot.  Wright contends that Officer Stallings shined his handgun-mounted flashlight through the passenger side window; Officer Stallings maintains he shined the flashlight through the front windshield, illuminating Wright sitting in the driver seat.  Officer Stallings also avers that he had exited the pedestrian gate of the apartment complex and was heading southwest to cross in front of Wright's vehicle in order to approach and question Wright.  Within seconds of Officer Stallings' shining his flashlight at Wright's vehicle, Wright accelerated the vehicle.  Wright asserts that he immediately turned to the left, toward the exit of the parking lot of the apartment complex. Officer Stallings states that Wright accelerated toward him.  Officer Stallings reacted by firing five shots within a two second interval at Wright's vehicle, two of which entered through the open passenger widow and struck Wright, and three of which struck the rear of the vehicle.  Wright then sped out of the apartment complex and drove two miles before he lost control, crashed into another vehicle, and was apprehended by police officers.

In 2010 Wright filed suit in Texas state court, alleging a claim under 42 U.S.C. § 1983 against the "City" and Officer Stallings, and state-law claims against Officer Stallings for negligence and gross negligence, or, alternatively, intentional assault.  After defendants removed the case, the court granted Wright's unopposed motion to stay the case pending the resolution of a parallel criminal action in which Wright was charged with aggravated assault of a public servant.  In 2013 Wright entered a judicial confession and pleaded no contest to a third degree felony charge of knowingly and intentionally threatening Officer Stallings with imminent bodily injury.

After the stay was lifted in October 2013, Wright filed an amended complaint, alleging a claim under 42 U.S.C. § 1983 against the City and Officer Stallings in his individual and official capacities; a claim for negligence against the City under the Texas Tort Claims Act ("TTCA"), Tex. Civ. Prac. & Rem. Code Ann. § 101.021 (West 2011); and a claim for assault and battery under Tex. Penal Code Ann. § 22.01 (West 2011), although he did not specify against whom this claim was brought. Officer Stallings and the City filed motions to dismiss. In *Wright v. City of Garland, Texas*, 2014 WL 1492356 (N.D. Tex. Apr. 16, 2014) (Fitzwater, C.J.) ("*Wright I*"), the court denied Officer Stallings' motion to dismiss Wright's § 1983 claim asserted against him, granted the City's motion to dismiss Officer Stallings' assault, negligence, and § 1983 claims asserted against it, and granted Wright leave to replead. *Id.* at *11.

Wright then filed a second amended complaint alleging claims under § 1983 against the City and against Officer Stallings in his individual and official capacities.[3] He alleges that the City and Officer Stallings deprived him of his constitutional right to be free from unreasonable, unnecessary, and excessive force. The City moves under Fed. R. Civ. P. 12(b)(6) to dismiss Wright's § 1983 claim asserted against it, and Officer Stallings moves for summary judgment. Wright opposes both motions.

---

[3]A § 1983 action against Officer Stallings in his official capacity is a suit against the City itself. *See, e.g., Kentucky v. Graham*, 473 U.S. 159, 165 (1985).

II

The court turns first to the City's motion to dismiss.

A

Under Rule 12(b)(6), the court evaluates the pleadings by "accept[ing] 'all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'" *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Martin K. Eby Constr. Co. v. Dall. Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)). To survive the City's motion, Wright's second amended complaint must allege enough facts "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant[s] [are] liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*; *see also Twombly*, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level[.]"). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'shown'—'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (alteration omitted) (quoting Fed. R. Civ. P. 8(a)(2)). Furthermore, under Rule 8(a)(2), a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Although "the pleading standard Rule 8 announces does not require 'detailed factual allegations,'" it demands more

- 5 -

than "'labels and conclusions.'"  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

And "'a formulaic recitation of the elements of a cause of action will not do.'"  *Id*. (quoting

*Twombly*, 550 U.S. at 555).

## B

Wright is suing the City under 42 U.S.C. § 1983.[4]  Although municipalities are

considered "persons" under § 1983, *see Monell v. Department of Social Services*, 436 U.S.

658, 688-89 (1978), they cannot be held liable simply on a theory of *respondeat superior*,

*id*. at 691.  Rather, liability attaches only "when execution of a government's policy or

custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said

to represent official policy, inflicts the injury[.]"  *Id*. at 694.  Thus to prevail on his § 1983

claim against the City, Wright must establish the following three elements: "a policymaker;

an official policy [or custom]; and a violation of constitutional rights whose 'moving force'

is the policy or custom."  *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001)

(quoting *Monell*, 436 U.S. at 694).

The City contends that Wright has failed to plead an official policy or custom of

which the City's policymakers were aware.  To the extent Wright alleges that the City had

_____

[4]"Section 1983 creates a private right of action for redressing the violation of federal
law by those acting under color of state law."  *Colson v. Grohman*, 174 F.3d 498, 504 n.2
(5th Cir. 1999) (citing *Migra v. Warren City Sch. Dist. Bd. of Educ*., 465 U.S. 75, 82 (1984)).
"Rather than creating substantive rights, § 1983 simply provides a remedy for the rights that
it designates.  Thus, an underlying constitutional or statutory violation is a predicate to
liability under § 1983."  *Harrington v. Harris*, 118 F.3d 359, 365 (5th Cir. 1997) (citations
and internal quotation marks omitted) (quoting *Johnston v. Harris Cnty. Flood Control Dist*.,
869 F.2d 1565, 1573 (5th Cir. 1989)).

a custom of tolerating and condoning its officers' deliberate indifference to the constitutional rights of individuals by failing, over a 15-year period, to discipline officers who engaged in the use of excessive force, or used deadly force in the absence of any imminent threat or harm or danger, the City argues that Wright has failed to provide details of the alleged prior "similar" acts that are sufficient to establish a custom or policy,[5] and that he has failed to adequately plead that the appropriate "policymaker" had actual or constructive knowledge of the alleged custom.

In response, Wright quotes *Wright I*, 2014 WL 1492356, at *9, contending that the second amended complaint "cures all the defects stated in [*Wright I*]," and asking the court to compare the second amended complaint to *Wright I* "and decide for itself."  P. Br. Resp. City Mot. 6.  Wright maintains that,

---

[5]Although Wright lists other individuals who allegedly "suffered excessive force or deadly force used against them as a result of the City's custom," 2d Am. Compl. ¶ 17, the City argues that Wright has cited no case in which any court has determined that a City employee violated anyone's rights.  Of the cases Wright lists, the City contends that three (Randy Davenport, Richard Rockwell, and Reginald Turner) were dismissed by the court on summary judgment or on the court's own motion; seven (Randy Davenport, Randall Ling, Rayfield Whiteman, Christopher Reed, Reginald Turner, Paul Zielke, and Matthew Robinson) did not involve deadly force; two (Randall Ling and Randy Allen) involved officers who were terminated; and three (Randy Allen, Paul Zielke, and Matthew Robinson) involved conduct that occurred after Wright's claim arose and thus could not have been a motivating force for Officer Stallings' actions.

> [i]ronically, in the City's First Motion to Dismiss, the City complained that Plaintiff's First Amended Complaint did not name any alleged decision makers. Now the City complains that in Plaintiff's Second Amended Complaint Plaintiff is too detailed in naming the decision makers. It is obvious the City is never going to be satisfied with Plaintiff's Complaint and is using its Motion to Dismiss as a method of getting rid of a meritorious case which should see the light of day in front of a jury.

*Id.* (citations omitted).

C

Wright does not allege that his injuries were caused by a policy statement, ordinance, regulation, or decision that was officially adopted and promulgated by the City's lawmaking officers or by an official to whom the lawmakers delegated policymaking authority. *See Webster v. City of Houston*, 735 F.2d 838, 841 (5th Cir. 1984) (en banc) (per curiam). Assuming *arguendo* that Wright has adequately alleged that there was a custom[6] of failing to discipline or punish City police officers for their unconstitutional use of excessive or deadly force, the court nonetheless grants the City's motion to dismiss Wright's § 1983 claim. This is because Wright has failed to plausibly allege that any City policymaker had knowledge of the alleged custom.

Where a custom has been established, knowledge must be attributable to a policymaker. *See Bennett v. City of Slidell*, 728 F.2d 762, 768 (5th Cir. 1984). "'Actual

---

[6]The Fifth Circuit has defined "official policy" to include "[a] persistent, widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy." *Webster*, 735 F.2d at 841.

knowledge may b[e] shown by such means as discussions at council meetings or receipt of written information,'" while "[c]onstructive knowledge 'may be attributed to the governing body on the ground that it would have known of the violations if it had properly exercised its responsibilities, as, for example, where the violations were so persistent and widespread that they were the subject of prolonged public discussion or of a high degree of publicity.'" *Okon v. Harris Cnty. Hosp. Dist.*, 426 Fed. Appx. 312, 316 (5th Cir. 2011) (per curiam) (quoting *Bennett*, 728 F.2d at 768).

In Wright's second amended complaint, he alleges that the policymakers for the City include the City Council, the Civil Service Board, Chief of Police Mitch Bates ("Chief Bates"), and/or his predecessor, Assistant Chief of Police Larry Ray, and/or his predecessor, and Captain of Internal Affairs Jeff Bryan, and/or his predecessor. Wright asserts that these policymakers "were aware that their custom and/or policy of condoning and tolerating its officers to commit civil rights violations would lead to more civil rights violations." 2d Am. Compl. ¶ 20. This conclusory allegation of knowledge is insufficient to identify a policymaker who can be charged with actual or constructive knowledge of the alleged custom of tolerating the unconstitutional use of excessive or deadly force. *See Bennett*, 728 F.2d at 768. Wright fails to specify which, if any, of the eight possible policymakers had actual or constructive knowledge of the alleged custom of tolerating City police officers' unconstitutional use of excessive or deadly force. And apart from his conclusory allegation, he fails to plausibly allege a single fact from which the knowledge of a specific policymaker

can reasonably be inferred.[7]   Accordingly, because Wright has failed to plead actual or constructive knowledge attributable to the City's governing body or an official to whom the City has delegated policy making authority, the court grants the City's motion to dismiss Wright's § 1983 claim based on an alleged custom of tolerating the unconstitutional use of excessive or deadly force.

D

The City next moves to dismiss Wright's § 1983 claim to the extent it is based on the premise that the City failed to train and supervise its officers.  The City contends that the second amended complaint fails to allege facts that show the City's training policy or procedure is inadequate, and that would state a claim that the need for more training is obvious.  Wright does not specifically address this argument in his response, other than by asking the court to "decide for itself" whether he has adequately pleaded his § 1983 claim. P. Br. Resp. City Mot. 6.

"Failure to train is a separate theory of municipal liability, but the same standard applies both to a failure to train claim and to a municipal liability claim." *Byers v. Navarro Cnty.*, 2012 WL 677203, at *16 (N.D. Tex. Mar. 1, 2012) (Fitzwater, C.J.) (citations omitted).  To establish this claim, Wright must prove that "'(1) the training procedures were

---

[7]Even assuming *arguendo* that the Chief of Police can be a "policymaker," for purposes of Wright's § 1983 claim, *see Webster*, 735 F.2d at 842, Wright does not allege that Chief Bates was, or should have been, aware of any specific instance in which an officer used excessive or deadly force in violation of a citizen's constitutional rights, and that the officer was not disciplined or punished or that Chief Bates knew, or should have known generally, that such behavior was being tolerated within the GPD.

inadequate; (2) the [City's] policymaker was deliberately indifferent in adopting the training policy; and (3) the inadequate training policy directly caused [Wright's] injury.'"   *Id.* (quoting *Carnaby v. City of Houston*, 636 F.3d 183, 189 (5th Cir. 2011)).   "Deliberate indifference" is a "stringent standard, requiring proof that a municipal actor disregarded a known or obvious consequence of his action," for which "[a] showing of simple or even heightened negligence will not suffice."   *Valle v. City of Houston*, 613 F.3d 536, 543, 547 (5th Cir. 2010).   To demonstrate deliberate indifference, a plaintiff must show that

> in light of the duties assigned to specific officers or employees the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need.

*Id.* at 547 (quoting *City of Canton, Ohio v. Harris*, 489 U.S. 378, 390 (1989) (internal quotation marks omitted).

Wright's allegations that the City failed to supervise and train its officers are at best conclusory.   The second amended complaint alleges:

> The [City] Police Department tolerated its officers using deadly force in the absence of any imminent threat of harm or danger to anyone, in violation of the constitutional rights of those persons affected by the conduct of [the City].   In this regard, [the City] failed to supervise and train its police officers and, further, overlooked and covered up officer misconduct just as it did in this instance.   The [City] had a general policy, pattern, custom and/or practice of not disciplining police officers for their conduct, thereby sanctioning the police officer's actions which amounted to a departmental policy of overlooking constitutional violations.   The [City's] failure to supervise and train and its acceptance of constitutional violations in other instances constitutes gross negligence and/or deliberate and

> conscious indifference to people's rights including the right to
> be free from unreasonable force.

2d Am. Compl. ¶ 22.  These conclusory allegations are insufficient to plausibly allege that, concerning City police officers' use of force, the need for more training was so obvious, and the inadequacy of training so likely to result in the violation of constitutional rights, that the policymakers could reasonably be said to have been deliberately indifferent to the need.  *See Valle*, 613 F.3d at 547.  Accordingly, the court dismisses Wright's § 1983 failure to train claim asserted against the City.[8]

E

The City is therefore entitled to dismissal of Wright's action against it under Rule 12(b)(6) for failure to state a claim on which relief can be granted.  The court also dismisses Wright's action against Officer Stallings in his official capacity.[9]

---

[8]The City also contends that Wright's claims are barred under *Heck v. Humphrey*, 512 U.S. 477 (1994), because Wright cannot succeed on his § 1983 claim for excessive force or failure to train without invalidating his judicial confession in the parallel criminal proceeding that Officer Stallings was engaged in the lawful discharge of his duties at the time of the incident.  Because the court is dismissing Wright's § 1983 claim against the City on other grounds, it need not address whether Wright's claims are also barred under *Heck*.

[9]Officer Stallings has not specifically moved to dismiss the claims asserted against him in his official capacity.  It is clearly established that a suit against a government official in his official capacity is "only another way of pleading an action against an entity of which [the official] is an agent."  *Monell*, 436 U.S. at 690 n.55.  "As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is . . . treated as a suit against the entity."  *Graham*, 473 U.S. at 166.  Accordingly, Wright's official-capacity claim against Officer Stallings is treated as duplicative of the claim against the City.

III

The court now turns to Officer Stallings' motion for summary judgment, in which he contends he is entitled to qualified immunity.

A

When a summary judgment movant will not have the burden of proof on a claim at trial, he can obtain summary judgment by pointing the court to the absence of evidence on any essential element of the nonmovant's claim. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Once he does so, the nonmovant must go beyond his pleadings and designate specific facts demonstrating that there is a genuine issue for trial. *See id.* at 324; *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam). An issue is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmovant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The nonmovant's failure to produce proof as to any essential element renders all other facts immaterial. *TruGreen Landcare, L.L.C. v. Scott*, 512 F.Supp.2d 613, 623 (N.D. Tex. 2007) (Fitzwater, J.). Summary judgment is mandatory where the nonmovants fails to meet this burden. *Little*, 37 F.3d at 1076.

When qualified immunity is at issue, "[t]he moving party is not required to meet [his] summary judgment burden for a claim of immunity." *Hathaway v. Bazany*, 507 F.3d 312, 319 (5th Cir. 2007) (internal quotation marks and citation omitted). Rather, the movant need only plead his good-faith entitlement to qualified immunity, whereupon "the burden shifts to the plaintiff to rebut it." *Id.* (internal quotation marks, citation, and emphasis omitted);

*see also Gates v. Tex. Dep't of Protective & Regulatory Servs.*, 537 F.3d 404, 419 (5th Cir. 2008) (noting that, when government official pleads qualified immunity, plaintiff must "rebut the defense by establishing that the official's allegedly wrongful conduct violated clearly established law and that genuine issues of material fact exist regarding the reasonableness of the official's conduct"). Once qualified immunity is asserted, the burden shifts to the plaintiff to demonstrate the inapplicability of the defense. *McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002) (en banc) (per curiam).

B

The doctrine of qualified immunity protects government officials from suit and liability for civil damages under § 1983 insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *E.g., Pearson v. Callahan*, 555 U.S. 223, 231 (2009); *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). "To decide whether [Officer Stallings is] entitled to qualified immunity, the court must first answer the threshold question whether, taken in the light most favorable to [Wright] as the part[y] asserting the injuries, the facts [he has] alleged show that [Officer Stallings'] conduct violated a constitutional right." *Ellis v. Crawford*, 2005 WL 525406, at *3 (N.D. Tex. Mar. 3, 2005) (Fitzwater, J.)[10] (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001) ("A court required to rule upon the qualified immunity issue must consider, then, this

_____

[10]*Ellis* addressed a Rule 12(b)(6) motion to dismiss, and therefore referred to the facts *alleged*. At the summary judgment stage, the court assesses whether the evidence that the plaintiff has introduced would enable a reasonable jury to find that the defendant's conduct violated a constitutional right.

threshold question: Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?  This must be the initial inquiry.")).[11]  "If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity." *Saucier*, 533 U.S. at 201.  "[I]f a violation could be made out on a favorable view of the parties' submissions, the next, sequential step is to ask whether the right was clearly established."  *Id.*  "Even if the government official's conduct violates a clearly established right, the official is nonetheless entitled to qualified immunity if his conduct was objectively reasonable."  *Wallace v. Cnty. of Comal*, 400 F.3d 284, 289 (5th Cir. 2005).  "The objective reasonableness of allegedly illegal conduct is assessed in light of the legal rules clearly established at the time it was taken."  *Salas v. Carpenter*, 980 F.2d 299, 310 (5th Cir. 1992) (citing *Anderson v. Creighton*, 483 U.S. 635, 639 (1987)).  "'The defendant's acts are held to be objectively reasonable unless *all* reasonable officials in the defendant's circumstances would have then known that the defendant's conduct violated the' plaintiff's asserted constitutional or federal statutory right."  *Cozzo v. Tangipahoa Parish Council-President Gov't*, 279 F.3d 273, 284 (5th Cir. 2002) (quoting *Thompson v. Upshur Cnty., Tex.*, 245 F.3d 447, 457 (5th Cir. 2001)).

---

[11]*Saucier*'s two-step procedure for determining qualified immunity is no longer mandatory.  *See Pearson*, 555 U.S. at 232, 236.  Courts are free to consider *Saucier*'s second prong without first deciding whether the facts show a constitutional violation.  *Id*. at 236. The "decision does not prevent the lower courts from following the *Saucier* procedure; it simply recognizes that those courts should have the discretion to decide whether that procedure is worthwhile in particular cases."  *Id*. at 242.

C

Officer Stallings argues that, with respect to the first two shots fired at Wright's vehicle (the only two shots that actually struck Wright and thus constituted a seizure under the Fourth Amendment), Wright's constitutional rights were not violated. He contends that, on the night in question, as he approached Wright's vehicle and shined his flashlight through Wright's front windshield, Wright quickly accelerated forward, causing him to believe that Wright intended to run him over.[12] As the vehicle moved toward Officer Stallings, he reacted by firing five shots in rapid succession (over the span of two and one half seconds) and in one continuous motion at the driver of the vehicle. Officer Stallings contends that this reaction was a normal and trained response to what he reasonably perceived to be an imminent and deadly threat.

Wright responds that a reasonable jury could find that Officer Stallings was not in imminent danger when he fired two shots into the passenger side of Wright's vehicle and three shots into the rear of the car as Wright attempted to drive away. He contends that, when Officer Stallings approached the vehicle, he was not in the possible direction of travel of Wright's vehicle, and he could not have reasonably believed he was in danger of getting run over. Wright also maintains that, even after his vehicle began to move, the movement and direction of the vehicle (from which it did not deviate) to the left and toward the exit of the parking lot was clearly in a direction away from the direction from which Officer

---

[12]Wright has stipulated and judicially confessed to intentionally and knowingly threatening Officer Stallings with imminent bodily injury.

Stallings approached the vehicle.  Wright also contends that the direction of the shots themselves is a clear indication of the lack of danger to Officer Stallings.  He posits that the first two bullets came from the passenger side of the vehicle, which he alleges indicates that the vehicle had already passed the point at which it could have harmed Officer Stallings, and the remaining shots were fired through the rear window of the vehicle.  Finally, Wright contends that, even if Officer Stallings did fear that he was in imminent danger, he did not act reasonably, because he could have avoided any perceived danger simply by stepping aside or back and out of the direction of travel of Wright's vehicle.

In his reply, Officer Stallings challenges the evidence on which Wright relies in his attempt to create a genuine issue of material fact.  He first contends that the surveillance video disproves Wright's story because it demonstrates that he was not standing to Wright's right when Wright accelerated, but, instead, his flashlight came through the front of the windshield of the vehicle to illuminate Wright, Wright's vehicle was angled toward the southern edge of the pedestrian island, and the entire encounter took approximately two seconds.  To the extent Wright relies on his own affidavit to create a genuine issue of material fact, Officer Stallings contends that Wright is prohibited from presenting a version of the facts that is inconsistent with the judicial confession he made in his state criminal proceedings and for which he received a benefit.  Officer Stallings posits that, in any event, Wright's affidavit is incompetent summary judgment evidence because it contradicts Wright's prior deposition testimony, in which he stated that when Officer Stallings initially approached his vehicle, he shined his flashlight "at [Wright] through the front windshield of

[his] car."  D. Stallings Reply 5 (quoting Stallings App. 60-61).

D

Wright alleges that Officer Stallings used excessive force, in violation of his Fourth Amendment right against unreasonable seizure.  "The Fourth Amendment's protection against unreasonable seizures of the person has been applied in causes of action under 42 U.S.C. § 1983 to impose liability on police officers who use excessive force against citizens." *Colston v. Barnhart*, 130 F.3d 96, 102 (5th Cir. 1997).  "'To prevail on an excessive force claim, a plaintiff must establish: (1) injury (2) which resulted directly and only from a use of force that was clearly excessive, and (3) the excessiveness of which was clearly unreasonable.'" *Ramirez v. Knoulton*, 542 F.3d 124, 128 (5th Cir. 2008) (quoting *Freeman v. Gore*, 483 F.3d 404, 416 (5th Cir. 2007)) (some internal quotation marks omitted).

There is no dispute that Wright suffered an injury.  "The relevant question in this case is whether the force was 'clearly excessive' or 'clearly unreasonable.'" *Id.*

> In deciding this question, [the court] must determine whether "the totality of the circumstances justified" the particular use of force.  *Tennessee v. Garner*, 471 U.S. 1, 9 (1985).  "The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham* [*v. Connor*], 490 U.S. [386,] 396 [(1989)].  This is an objective standard: "the question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Id.* at 397.  This test "allow[s] for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Id.* The test for reasonableness also must consider "whether the

- 18 -

suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id*. at 396.

*Ramirez*, 542 F.3d at 128-29.

"Use of deadly force is not unreasonable when an officer would have reason to believe that the suspect poses a threat of serious harm to the officer or others." *Mace v. City of Palestine*, 333 F.3d 621, 624 (5th Cir. 2003); *see also Thompson v. Mercer*, 762 F.3d 433, 437 (5th Cir. 2014) (same). "To gauge the objective reasonableness of the force used by a law enforcement officer, [the court] must balance the amount of force used against the need for force," paying "careful attention to the facts and circumstances of each particular case." *Flores v. City of Palacios*, 381 F.3d 391, 399 (5th Cir. 2004) (alteration, citations, and internal quotation marks omitted).

E

Wright has failed to produce evidence that would enable a reasonable jury to find that Officer Stallings did not have reason to believe that Wright posed a threat of serious harm to Officer Stallings' physical safety at the time he fired his weapon at Wright's vehicle. *See Mace*, 333 F.3d at 624. Officer Stallings avers that, at the time Wright's vehicle began to accelerate, he was standing in front of the vehicle, about 10-20 feet away, and when the vehicle lurched forward, it was headed directly toward him. This conduct caused him to "fear for [his] life" and to fire five shots, in rapid succession, to prevent Wright from running over him. D. App. 3. Officer Stallings avers that he "only had a split second to react," and that as soon as he realized the vehicle had missed him, he stopped firing his weapon. *Id.*

- 19 -

Melanie Davis Caldwell ("Caldwell"), an eyewitness, avers that when she heard Wright honking his horn, she went to her apartment window.  According to Caldwell, she witnessed Officer Stallings walk toward Wright's vehicle and Wright "quickly dr[iving] forward, toward [Officer Stallings]."  *Id.* at 105.  Caldwell avers that

> [a]t that time, it appeared to me that the sports car was going to hit the police officer.  However, just as the car was about to hit the police officer, the officer quickly moved to his left and the car sped out of the parking lot.  If the officer had not moved out of the way, I believe the car would have run him over.

*Id.*

Wright contends that a reasonable jury could find that Officer Stallings was *not* in imminent danger when he fired his weapon at Wright.  In support, he relies on affidavit testimony and the surveillance video from the apartment complex, which he contends "is worth 'ten thousand words.'"  P. Br. 6.  The court concludes that neither Wright's affidavit testimony nor the surveillance video would enable a reasonable jury to find, under the totality of the circumstances, that at the time Officer Stallings fired his weapon at Wright, he did not reasonably believe that Wright posed a threat of serious harm to his physical safety.

Wright testified in his January 28, 2014 deposition that Officer Stallings "came out of the gate and he shined his flashlight right on [my] windshield."  D. App. 58-59.  Wright also averred that "when [he] first saw [Officer Stallings] he was shining the flashlight at [me] through the front windshield of [my] car . . . before [I] accelerated forward."  *Id*. at 60-61.  Wright contradicts his deposition testimony in his summary judgment affidavit.  There, he avers, *inter alia*, that he did *not* drive his vehicle toward Officer Stallings, that Officer

Stallings remained at all times to the right side of Wright's vehicle, and that at no time did Officer Stallings shine his flashlight through the windshield while standing in front of Wright's vehicle. "It is well settled that this court does not allow a party to defeat a motion for summary judgment using an affidavit that impeaches, without explanation, sworn testimony." *S.W.S. Erectors, Inc. v. Infax, Inc.*, 72 F.3d 489, 495 (5th Cir. 1996); *see also Albertson v. T.J. Stevenson & Co.*, 749 F.2d 223, 233 n.9 (5th Cir. 1984) ("The nonmoving party cannot defeat a summary judgment motion by attempting to create a disputed material fact through the introduction of an affidavit that directly conflicts with his prior deposition testimony."). Nor would the surveillance video enable a reasonable jury to find that, under the totality of the circumstances, Officer Stallings lacked reason to believe that Wright posed a threat of serious harm to his physical safety. The video shows, at 2:20:09, just before Wright's vehicle accelerated to exit the parking lot, that Officer Stallings was positioned in front of Wright's vehicle, and a flashlight was illuminating Wright's front windshield and face. Wright has not introduced any other evidence that would enable a reasonable jury to find that Officer Stallings lacked reason to believe, under the totality of the circumstances, that Wright posed a threat of serious harm to his physical safety at the time he fired his weapon. *See Mace*, 333 F.3d at 624.

In sum, the summary judgment record would only enable a reasonable jury to find that, as Officer Stallings was approaching Wright's vehicle from the front and to Wright's right, Wright accelerated in the direction of Officer Stallings. These actions clearly gave Officer Stallings reason to believe that, under the totality of the circumstances, Wright posed

a threat of serious harm to his physical safety at the time he fired his weapon.

F

Wright contends that Officer Stallings did not act reasonably under the circumstances because he could have avoided any alleged danger simply by stepping aside or backing out of the direction of travel of Wright's vehicle.  The court disagrees.

In *Hathaway* the Fifth Circuit upheld summary judgment dismissing a § 1983 claim based on a police officer's fatal shooting of the plaintiff's son.  The police officer testified that he saw the decedent's vehicle accelerate toward him, and, "in the snap of a finger," he realized he could not get out of the way, decided to fire, unholstered his gun, was actually struck by the decedent's vehicle, and fired his weapon, fatally wounding the driver.  *Hathaway*, 507 F.3d at 321-22.  The court concluded that the officer's actions were objectively reasonable, and they therefore did not violate the decedent's Fourth Amendment rights.  It explained:

> The only remaining question, then, is whether an officer would be justified in firing his weapon when threatened by a nearby accelerating vehicle, even if, owing to the limited time available to respond, the shot was fired when or immediately after the officer was hit.  The evidence indicates that [the officer] was in close proximity to a car that he had asked to pull over that then accelerated towards him, making perception of a serious threat reasonable.  Given the extremely brief period of time an officer has to react to a perceived threat like this one, it is reasonable to do so with deadly force.  It is this brevity, and the coordinate rapid response that it demanded from [the officer], that is the distinguishing factor in this case.

*Id.* at 322 (footnote and citation omitted); *see also Sanchez v. Edwards*, 433 Fed. Appx. 272,

- 22 -

275 (5th Cir. 2011) (per curiam) (holding that officers' use of deadly force was reasonable where driver quickly accelerated in direction of one police officer and officers had only short period of time in which to react).

As in *Hathaway*, a reasonable jury could only find that Officer Stallings acted reasonably in his use of deadly force against Wright. Like the officer in *Hathaway*, it was necessary for Officer Stallings to take action quickly and decisively in response to an oncoming vehicle that presented a threat of serious harm to him. Officer Stallings had only seconds to react to Wright's actions. That Officer Stallings might have avoided what he perceived as the imminent threat of being struck by Wright's oncoming vehicle by taking a step back does not change the court's conclusion. Nor, when viewed under the totality of the circumstances and in the context of the short time frame involved (two and one half seconds), does it matter that Officer Stallings fired three more shots through the rear window of the vehicle. "'[W]e must never allow the theoretical, sanitized world of our imagination to replace the dangerous and complex world that policemen face every day. What constitutes "reasonable" action may seem quite different to someone facing a possible assailant than to someone analyzing the question at leisure.'" *Stroik v. Ponseti*, 35 F.3d 155, 158-59 (5th Cir. 1994) (quoting *Smith v. Freland*, 954 F.2d 343, 347 (6th Cir. 1992)). Because of the very short period of time that Officer Stallings had to react to Wright's abrupt acceleration, and Officer Stallings' obvious peril given his position in front of the vehicle, and the short interval during which the shots were fired, a reasonable jury could only find that Officer Stallings reacted reasonably and did not violate Wright's Fourth Amendment rights when he

fired his weapon at Wright's vehicle.[13]

G

Because the court holds that plaintiff has not alleged facts that show that Officer Stallings violated a constitutional right, "there is no necessity for further inquiries concerning qualified immunity." *Saucier*, 533 U.S. at 201. Accordingly, based on qualified immunity, Officer Stallings is entitled to summary judgment dismissing Wright's § 1983 claim asserted against him in his individual capacity.

*   *   *

For the foregoing reasons, the court grants the City's motion to dismiss for failure to state a claim on which relief can be granted, grants Officer Stallings' motion for summary judgment based on qualified immunity, and dismisses this action with prejudice by judgment filed today.

**SO ORDERED.**

November 13, 2014.

SIDNEY A. FITZWATER<br>
UNITED STATES DISTRICT JUDGE

---

[13]Officer Stallings also contends that Wright's claims are barred, in their entirety, under *Heck*, 512 U.S. 477, because he cannot succeed on his § 1983 claim for excessive force without invalidating his criminal proceedings, in which he confessed that he threatened Officer Stallings with imminent bodily injury. Because the court grants summary judgment dismissing Wright's § 1983 claim against Officer Stallings on other grounds, it does not address the contention that Wright's claims are barred under *Heck*.

- 24 -